UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH GAIL SHADE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No.  2:19-cv-1122-KJN<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 15, 16.) |

Plaintiff Elizabeth Gail Shade seeks judicial review of a final decision by the Commissioner of Social Security denying her claim for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act.[1]  Plaintiff moved for summary judgment, arguing that the Administrative Law Judge ("ALJ") failed to support his Step Five analysis with substantial evidence.  The Commissioner filed a cross-motion for summary judgment, contending the ALJ's analysis was fully supported.

After carefully considering the record and the parties' briefing, the court DENIES the Commissioner's motion for summary judgment, GRANTS Plaintiff's motion for summary judgment, and REMANDS for further proceedings.

///

---

[1] This action was referred to the undersigned per Local Rule 302(c)(15), and both parties consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 5, 6.)

1

I.  **BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**[2]

Plaintiff applied for disability insurance benefits on March 24, 2014, but was denied in both the initial proceedings as well as on review. (Administrative Transcript ("AT") 84-85; 145-46.) Aided by an attorney, she sought review of these denials with an ALJ. (AT 174-75.) Plaintiff's counsel appeared at a July 17, 2017 hearing, but plaintiff herself failed to show. (AT 50-60.) The ALJ heard testimony from a vocational expert ("VE") regarding plaintiff's ability to work, and thereafter rescheduled the hearing. (Id.) Plaintiff again failed to show for the October 23, 2017 hearing, though her counsel was present. (AT 39-49.) At this second hearing, the ALJ heard testimony from a second VE regarding plaintiff's ability to work. (Id.)

On December 21, 2017, the ALJ issued a decision determining that plaintiff was not disabled for the relevant period. (AT 19-32.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since January 1, 2001—plaintiff's alleged onset date. (AT 22.) At step two, the ALJ found plaintiff to have had the following severe impairments:

> [D]egenerative disc disease status post discectomy; Keinbock's disease; right radial styloidectomy and scapho-capitate intracarpal fusion with distal radius bone graft; status post right finger fracture; anxiety; somatic symptom disorder.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571–76; Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987). The following summarizes the sequential evaluation:
  **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
  **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
  **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
  **Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
  **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

(Id.)  The ALJ determined at step three that these impairments did not meet or medically equal the severity of a listed impairment.  (AT 23) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform light work, with the following exceptions:

> She is limited to lifting 20 pounds occasionally and 10 pounds frequently and carrying 20 pounds occasionally and 10 pounds frequently. She is limited to sitting up to 6 hours in an 8-hour workday and standing and walking 6 hours total in an 8-hour workday. She is limited to pushing and pulling as much as lifting and carrying. She is limited to occasional overhead reaching bilaterally. She is limited to occasional handling with the right upper extremity. She is limited to occasional fingering with the right upper extremity.  She could occasionally climb ramps and stairs she could occasionally climb ladders ropes and scaffolds. She could occasionally balance stoop kneel crouch and crawl she should avoid even moderate exposure to hazards such as unprotected heights heavy operating machinery and operating a motor vehicle. She is limited to simple routine and repetitive tasks and simple work-related decisions. She is limited to frequent interaction with the public.

(AT 24-25, cleaned up.)  In formulating this RFC, the ALJ stated he considered opinion evidence, as well as "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  (AT 25-30.)  Ultimately, the ALJ concluded at steps four and five that while plaintiff was incapable of performing past relevant work, jobs existed in significant numbers in the national economy that plaintiff could still perform given the restrictions detailed in the RFC.  (AT 30-32.)  Specifically, the ALJ relied on the testimony of the VE from the October 2017 hearing, who stated plaintiff's RFC would allow her to work as a children's attendant (5,100 positions nationally), a tanning salon attendant (328 positions nationally), an usher (4,800 positions nationally), and a school bus monitor (381 positions nationally).  (AT 32.)

In November of 2018, the Appeals Council denied plaintiff's request for review.  (AT 5-10.)  Plaintiff then timely filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross–motions for summary judgment.  (ECF Nos. 1, 15, 16.)

///

///

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. Buck, 869 F. 3d at 1048.

## III. ISSUES PRESENTED

Plaintiff presents one issue in her motion for summary judgment: that the ALJ's Step Five determination failed to identify occupations with a significant number of jobs in the national economy. Plaintiff essentially argues that in the Ninth Circuit, anything less than 25,000 jobs in the national economy is insignificant, and because the ALJ only explicitly relied on the VE who testified at the October 2017 hearing — who only identified about 10,000 jobs in the national economy — the ALJ's analysis is deficient.

The Commissioner counters that, given the rule in the Ninth Circuit is that there is no "bright line test" for determining what number of jobs is significant, and other courts have found less than 10,000 jobs to be substantial, this court should affirm. Additionally, the Commissioner notes that the VE who testified at the July 2017 hearing identified approximately 72,000 jobs in the national economy that plaintiff could perform. Thus, when added to the October VE's figures, there is substantial evidence to support the ALJ's Step Five findings.

## IV. DISCUSSION

Because plaintiff does not raise any issues with the ALJ's analysis at the first four steps, the undersigned presumes the analysis is correct and will not comment on those portions further. Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006).

In Zavalin v Colvin, the Ninth Circuit concisely set forth the process by which the Commission is to meet its burden to "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." 778 F.3d 842 (9th Cir. 2015) (citing Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995), and 20 C.F.R. § 416.920(g)). Under step–five, the ALJ is first to assess the claimant's "residual functional capacity," defined as the most that a claimant can do despite "physical and mental limitations" caused by his impairments and related symptoms, then is to consider potential occupations the claimant may be able to perform. Id. at 845 (citing 20 C.F.R. § 416.966). For occupations, the ALJ may rely on the Dictionary of Occupational Titles – the SSA's "primary source of reliable job information" regarding jobs that exist in the national economy, as well as testimony from vocational experts – who can speak to specific occupations that a claimant can perform in light of the RFC. Id. at 845-46 (citing 20 C.F.R. §§ 416.969, 416.966(d)(1) and (e); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990)). "When there is an apparent conflict between the vocational expert's testimony and the DOT - for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle — the ALJ is required to reconcile the inconsistency." Zavalin, 778 F.3d at 846 (citing Massachi v. Astrue, 486 F.3d 1149, 1153–54 (9th Cir. 2007)). The Commissioner bears the burden at step five. Bowen, 482 U.S. at 146 n.5.

Under the Social Security Act, an individual will be deemed to be under a disability if the impairments preclude both previous work and "any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). There is no bright-line test for how many jobs constitutes substantial evidence, but the Ninth Circuit has instructed that a "comparison to other cases" can be instructive. Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). In Beltran, the Ninth Circuit held that 1,680 national jobs was not significant, and remanded to the ALJ for further proceedings. Id. at 389-390. Conversely, in Gutierrez v. Commissioner, the Ninth Circuit stated the statutory standard was met where the ALJ determined 25,000 jobs in the national economy was significant. 740 F.3d 519, 528 (9th Cir. 2014).

Here, the ALJ's findings at Step Five amounted to a determination that plaintiff was not disabled because she could perform in occupations with approximately 10,000 jobs in the national economy. (AT 31-32.) In the decision, the ALJ stated:

> The vocational expert testified [at the October 2017 hearing that plaintiff] . . . would be able to perform the requirements of representative occupations such as children's attendant[,] 5100 positions nationally; tanning salon attendant[,] 328 positions nationally; usher[,] 4800 positions nationally; [and] school bus monitor[,] 381 positions nationally.

(AT 32, cleaned up.) Unsurprisingly, the parties cite to multiple cases from across the country that support their positions. Cf. Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997) (finding 10,000 jobs in the national economy to be significant); Bishop v. Shalala, 1995 WL 490126, at *2 (6th Cir. 1995) (unpub.) (6,100 jobs nationally sufficient); Mercer v. Halter, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001) (5,000 jobs nationally significant); with Valencia v. Astrue, 2013 WL 1209353, at *18 (N.D. Cal. March 25, 2013) (approx. 14,000 jobs in the nation not significant); De Rivera v. Berryhill, 710 Fed. Appx. 768 (9th Cir. 2018) (unclear whether 5,000 national jobs would be sufficient). In recent years, the Ninth Circuit has questioned in a number of unpublished cases whether 10,000 jobs in the national economy would suffice. See Lemauga v. Berryhill, 686 Fed. Appx. 420, 421-22 (9th Cir. 2017) (noting that "this court has never found [12,600 jobs in the national economy] to be significant."); Randazzo v. Berryhill, 725 Fed. Appx. 446 (9th Cir. 2017) ("[T]he remaining 10,000 electrical accessories assembler jobs found by the expert may not amount to a significant number of jobs in the national economy."); Little v. Berryhill, 690 Fed. Appx. 915, 917-18 (9th Cir. 2017) (remanding because the court could not "confidently conclude that no reasonable ALJ ... could have reached a different disability determination," where "only 18,500 jobs existed nationally . . . ."). While not binding, these unpublished Ninth Circuit cases are highly persuasive on the numbers. Thus, based on the ALJ's stated findings, a remand is necessary, as the Step Five analysis is not supported by substantial evidence.

///

///

1     The Commissioner also urges the court to take into account that at the July 2017 hearing, another VE testified about the number of jobs available in the national economy, given plaintiff's age, education, work experience, and RFC.  The Commissioner notes that the July VE testified that there were an additional 72,000 jobs in the national economy that plaintiff could perform, and so when added to the October VE's testimony, the ALJ's Step Five analysis is supported by substantial evidence.  However, as plaintiff correctly notes, the ALJ (for some reason) decided to wholly ignore the July VE's testimony and rely solely on the testimony from the October VE.  The Ninth Circuit has been very clear that, when reviewing an issue in the social security context, courts are not to rely on evidence that the ALJ did not discuss.  See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

     Further, even if the court could construe the ALJ's decision in a way that would allow the court to consider the July VE's testimony, it is unclear whether 72,000 is the figure to be included in the totals.  It is true that the RFC presented to the July VE was, for all practical purposes, the same as that presented to the October VE (cf. AT 43 with AT 54-55).  However, the July VE appeared to walk back some of his conclusions on the cleaner and office helper occupations after being questioned by plaintiff's counsel and the ALJ himself.  (See AT 56-59.)  This ambiguity calls into question whether the cleaner (19,000 jobs nationally) and office helper (43,000 jobs nationally) are occupations that could be included in the ALJ's Step Five findings.  (AT 56-58.)  Further, the court cannot confidently say that 72,000 is in fact the number that could be added to the totals.  It appears the July VE intended to reduce the numbers of jobs available in these occupations due to plaintiff's manipulative limitations — which the Dictionary of Occupational Titles did not account for.  (AT 56.)  The ALJ did state he "did all the math so no reductions are necessary," but just before speaks in a conditional tense — that he "would reduce the employment numbers by 75 percent [for the housekeeper and cleaner, and] would reduce the employment numbers for the office helper by 50 percent for the same reason."  (Id.)  Thus, even if the ALJ's failure to cite the July VE's testimony could be considered harmless, the undersigned finds this testimony ambiguous.  It is for the ALJ, and not the court, to resolve such ambiguities — even though the ALJ's ultimate determination is likely to remain the same.  Edlund, 253 F. 3d

7

at 1156.

In order to simplify the proceedings for the parties, the Court sets forth the following scope of remand: the ALJ shall reconsider his findings at Step Five only. Should the ALJ wish to resolve the ambiguities with the July VE's testimony and include those occupations in the final totals in order to crest the statutory standard (of approx. 25,000), the ALJ should explicitly detail those occupations in his revised decision. See, e.g., Nabis-Smith v. Saul, 773 Fed.Appx. 927 (9th Cir. 2019) ("Although the ALJ erred in relying on vocational expert testimony from the 2012 hearing that was not in the record, the error was harmless because Nabis-Smith's RFC remained the same and, therefore, the vocational expert testimony would remain the same."); Sherman v. Astrue, 233 Fed. Appx. 705 (9th Cir. 2007) (same). Alternatively, if the ALJ wishes to consider other occupations, the testimony of another VE may be taken.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Commissioner's cross-motion for summary judgment (ECF No. 16) is DENIED;
2. Plaintiff's motion for summary judgment (ECF No. 15) is GRANTED;
3. The final decision of the Commissioner is REVERSED, and the case is REMANDED for further administrative proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g); and
4. The Clerk of Court shall CLOSE this case.

Dated: May 20, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

shad.1122